UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 01-CV-4768 (JFB)

———————————

INTERNATIONAL CONSULTING SERVICES, LIMITED,

Plaintiff,

VERSUS

CHEAP TICKETS, INC.,

Defendant.

———————————

MEMORANDUM AND ORDER
September 12, 2007

———————————

JOSEPH F. BIANCO, District Judge:

The instant action concerns claims and counterclaims by plaintiff International Consulting Services, Limited ("ICS") and defendant Cheap Tickets, Inc. ("Cheap Tickets") regarding the use of certain of Cheap Tickets' federally registered trademarks. Currently before the Court is Cheap Tickets' motion for an accounting of ICS' profits, for treble damages, for attorneys' fees and costs, for interest payments and for sanctions. For the reasons set forth below, ICS' motion is granted in part and denied in part.

I. BACKGROUND

In this case, ICS was sent cease-and-desist letters from Cheap Tickets on December 15, 1999 and July 10, 2001. *Int'l Consulting Servs., Ltd. v. Cheap Tickets*, No. 01-CV-4768, at 5-6 (March 29, 2004) (Memorandum and Order). In response to Cheap Tickets' July 10, 2001 letter, ICS initiated the instant action, attempting to invalidate Cheap Tickets' registered trademarks. *Id.*, at 6. On May 5, 2003, Cheap Tickets moved for summary judgment on its federal counterclaims, and ICS cross-moved for summary judgment on its claims for a declaration that the Cheap Tickets service marks are generic, and for the cancellation of Cheap Tickets' registrations. (Def.'s Br., at 1.) Cheap Tickets also moved for sanctions regarding ICS' conduct during discovery. (*Id.*)

On March 29, 2004, this Court granted Cheap Tickets' motion for summary judgment as to all counterclaims and denied ICS's motion for summary judgment. *Int'l Consulting Servs., Ltd.*, No. 01-CV-4768, at 24 (March 29, 2004). The Court also granted

defendant's motion for sanctions. *Id.* On April 9, 2004, judgment was entered in favor of Cheap Tickets and the Court stated that "[p]rofits made by ICS, damages suffered by Cheap Tickets, costs, and attorney's fees, pursuant to the Lanham Act (15 U.S.C. §§ 1117(a) and (b)), and sanctions pursuant to the [March 29 Order], will be awarded to Cheap Tickets in an amount to be determined by the Court after submissions by the parties and a hearing, if necessary." *Int'l Consulting Servs. v. Cheap Tickets, Inc.*, No. 01-CV-4768 (Mar. 29, 2004) (Judgment).

On April 19, 2004, plaintiff filed a petition for relief under Chapter 11 of the Bankruptcy Code, thereby staying the instant action before the district court. *In re ICS Travel, Ltd.*, 8-04-82574-478 (DTE) (Bankr. E.D.N.Y. Apr. 19, 2004). On December 26, 2006, plaintiff's bankruptcy case was dismissed, and the automatic stay imposed by the bankruptcy filing was lifted. *In re ICS Travel, Ltd.*, No. 804-82574-478 (Bankr. E.D.N.Y. Dec. 27, 2006) (order dismissing case). In the meantime, plaintiff's appeal of the Court's March 29, 2004 decision and April 9, 2004 judgment was denied, and the Second Circuit affirmed this Court's decision to the extent that it issued a permanent injunction precluding plaintiff from using "trademarks and a domain name registered to . . . Cheap Tickets, Inc."[1] *Int'l Consulting Servs. v. Cheap Tickets, Inc.*, No. 04-2153, 140 Fed. Appx. 305 (2d Cir. Aug. 8, 2005) (summary order).

## II. ACCOUNTING OF PROFITS

Cheap Tickets argues that it is entitled to ICS' gross revenues between March 2001, when ICS first launched the infringing website "CheapTicket.com," and April 9, 2004, when the Court entered judgment against ICS. (Def.'s Br., at 3-4.) The Lanham Act provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). In construing this provision, the Second Circuit has held:

> The statute thus allocates the initial burden of proving gross sales to the trademark plaintiff, and the subsequent burden of proving costs to the infringing defendant. Ordinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it. This sequence of proof thus places the burden of proving costs on the party with the superior access to such information, namely the infringing defendant.

*Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990). In this instance, Cheap Tickets alleges that ICS earned over one million dollars in revenues. ICS contends, however, that its costs exceeded any revenues, and that the company never turned a profit from operating the "CheapTicket.com" website.

---

[1] Plaintiff's motion for a rehearing *en banc* before the Second Circuit was denied.

2

A.  Revenues

The parties have submitted copies of ICS' federal income tax returns for the years 2001, 2002, 2003, 2004 and 2005.[2] (Lawrence Decl., Ex. J; Pl.'s Exs. 1-5.) These returns indicate that ICS earned the following revenues for each year: $23,188 in 2001, $303,877 in 2002, $415,430 in 2003 and $133,608 in 2004.[3] (Lawrence Decl., Ex. J.) The sum total of ICS' revenues from 2001 through 2004, based upon the tax returns, is $876,103.

However, Cheap Tickets argues that plaintiff's federal tax returns do not accurately reflect ICS' revenues. Cheap Tickets has also submitted records from ICS' bank accounts with European American Bank ("EAB") (which was acquired by Citibank, N.A. ("Citibank") in 2001) and North Fork Bank ("North Fork"). (*Id.*, Exs. F, G.) While these records are incomplete, the records submitted by Cheap Tickets indicate that ICS deposited at least $43,322.97 into the EAB/Citibank account and $89,854 into the North Fork account during 2001, for an amount totalling $133,176.97. (*Id.* ¶27, Exs. F, G.) This represents a large discrepancy from the $23,188 in gross revenues reported to the IRS for 2001. (Pl.'s Ex. 1.) The EAB/Citibank and North Fork records show that ICS deposited $26,043.47 and $297,322.07 into the accounts, respectively, during 2002, for a total of $323,365.54. (*Id.* ¶27, Exs. F, G.) This represents a significant discrepancy from the $303,877 in revenues reported by ICS in its tax returns for that year. (Pl.'s Ex. 2.) Cheap Tickets has also presented documentation that between January 1, 2003 and March 31, 2003, ICS deposited $104,754.93 into the North Fork Account. (*Id.*, Ex. G.) ICS has produced neither the North Fork records for the remainder of 2003 through the April 9, 2004 judgment, nor the EAB/Citibank records for 2003 through the April 9, 2004 judgment.

Cheap Tickets argues that the Court should also take into account the additional revenues indicated by deposits into the EAB/Citibank and North Fork accounts. ICS contends that the Court should consider only ICS' federal tax returns in determining their revenues over the 2001 to 2005 period; however, ICS neither explains the discrepancy between their bank statements and tax returns, nor does the company offer contradictory evidence demonstrating that the bank account deposits do not reflect ICS' gross sales. Under these circumstances, the tax returns are insufficient to fulfill this Court's requirement of an accounting. *See, e.g., Am. Express Co. v. Am. Express Limousine Serv. Ltd.*, 785 F. Supp. 334, 337 (E.D.N.Y. 1992) ("In general,

---

[2] Cheap Tickets contends that the 2001 tax return submitted by ICS may not represent all of ICS' tax returns for 2001. According to Cheap Tickets, the 2001 tax return is for "International Consulting Services Ltd. d/b/a Thorough Solutions.com," while the 2002 through 2005 tax returns are for "ICS Travel Ltd." (Def.'s Reply Br., at 2.) Deposition testimony of ICS' president indicates that there should be a separate 2001 tax return for ICS Travel Ltd., and that the revenue amount on the submitted tax return does not include the selling of travel-related services (which ICS was engaged in during 2001). As noted *infra*, the Court is relying upon ICS' bank statements for 2001, rather than its tax returns, to determine revenue. Thus, the Court has avoided any purported prejudice to Cheap Tickets arising from a purported "missing" tax return for ICS from 2001.

[3] ICS has also submitted its tax returns for 2005, and its monthly operating statements to the bankruptcy court for the months of January through August 2006. (Pl.'s Exs. 6-13.)

it appears that the mere production of tax records is not sufficient to satisfy a court order for an accounting."). Accordingly, the Court finds that plaintiff has not met its burden of proving that Cheap Tickets' estimate of ICS' gross profits is incorrect. *See Am. Honda Motor Co.*, 918 F.2d at 1063. Therefore, the Court shall determine ICS' gross revenues based upon the sum of the following: EAB/Citibank and North Fork deposits for 2001 ($133,176.97) and 2002 ($323,365.54), ICS' reported gross sales as indicated by ICS' 2003 tax return ($415,430),[4] and 27% of ICS' reported gross sales, as indicated by their 2004 tax return ($36,074.16).[5] This sum is equal to $908,046.67.

### B. Deduction of Costs

ICS asks the Court to deduct its overhead, operating expenses, federal taxes, advertising costs, and the costs of litigating the instant case and the bankruptcy proceeding. (Pl.'s Br., at 2; Smith Aff., at ¶¶ 5-12.) According to ICS, the sum total of these costs is represented by its deductions as listed in its federal tax returns. (Smith Aff., at ¶¶ 5-12.) Cheap Tickets argues that ICS has failed to meet its burden of demonstrating expenses, and that, even if the Court permits ICS to rely solely on its tax returns in support of its claimed deductions, certain improper deductions must be excluded. (Def.'s Reply Br., at 2-9.) Based upon a review of the parties' submissions and the applicable case law, the Court shall exclude any deductions for "credit card expenses" and legal fees. For the reasons set forth below, the Court finds that the resulting amount to be deducted from plaintiff's revenues is $328,982.01. *See also infra*, at Appendix 1.

Under the Lanham Act, the infringing party bears the burden of proving any costs to be deducted from its profits, and must show that any costs claimed are "attributable to its unlawful sales." *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 7 (2d Cir. 1989); *see also* 15 U.S.C. § 1117(a) (the infringing party "must prove all elements of cost or deduction claimed"); *Am. Honda Motor Co.*, 918 F.2d at 1063. According to Cheap Tickets, by simply providing its federal tax returns and failing to indicate which costs relate specifically to infringing behavior, ICS has failed to meet this burden. (Def.'s Br., at 3 (quoting *Am. Express Co.*, 785 F. Supp. at 337 ("In general, it appears that the mere production of tax records is not sufficient to satisfy a court order for an accounting."))). ICS provides only a blanket assertion that "[b]ecause the gross sales [reported on its tax returns] were under cheapticket.com, all of plaintiff's expenses are attributable to the profits at issue." (Pl.'s Br., at 2 (citing *Manhattan Indus., Inc.*, 885 F.2d at 7 (noting that "overhead that does not assist in production of infringing item 'should not be credited to the infringer; that which does, should be'") (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 54 (2d Cir. 1939)).

---

[4] As neither party has presented evidence, other than the 2003 tax return, of ICS' revenues for the entire year of 2003, the Court shall rely on the tax return in determining ICS' revenues for that year.

[5] Twenty-seven percent represents the fourteen out of fifty-two weeks of 2004 that ICS engaged in infringing conduct, prior to this Court's judgment on April 9, 2004.

The Court finds that, even if all of the deductions listed in ICS' tax returns relate to the business costs of the infringing conduct, the assertions in the tax returns are so vague and unspecified that the Court cannot properly rely upon them as a fair representation of ICS' costs. As a result, ICS must bear the burden of this uncertainty. *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985) (citing *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 597 F. Supp. 1186, 1190-91 (E.D.N.Y. 1984)). Under these circumstances, "doubts about actual damages will be resolved against [the] party who evades ascertainment of actual damages." *Id.* at 973 (citing *Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*, 425 F. Supp. 234, 238 (S.D.N.Y.)); *see also Aris Isotoner Inc. v. Dong Jin Trading Co., Inc.*, No. 87-CV-890 (RO), 1989 WL 236526 (S.D.N.Y. Sept. 22, 1989) (noting that "consideration may also be given to a defendant's cooperation or lack thereof in providing records upon which an amount can be based.") (quoting *Original Appalachian Artworks Inc. v. Yuil Int'l Trading Corp.*, 5 U.S.P.Q.2d 1516, 1524 (S.D.N.Y. 1987)); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:66 (4th ed. 2001). Accordingly, where an infringing party does not provide information from which net profit can be reliably determined, "it is permissible to award the highest reasonably ascertainable amount of profits." *Aris Isotoner Inc.*, 1989 WL 236526, at *5 (holding that, where infringing party had provided "no reasonable basis from which the Court can determine the amount of any deductions, they need not form part of the calculation") (citing *Chesa*, 425 F. Supp. at 238; *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 208 U.S.P.Q. 421, 424-25 (S.D.N.Y. 1980)); *Allergan Inc. v. Mira Life Group Inc.*, 72 U.S.P.Q.2d 1756, 1760 (C.D. Cal. 2004) ("Where an infringing defendant does not produce evidence from which the court can derive the total profit by deducting costs from revenues, the court may award the entirety of revenue as profit in a trademark infringement case.") (citation omitted).

First, the Court declines to deduct ICS' credit card expenses, which ICS avers represent the cost of "internet advertising paid for by the company." (Smith Aff. ¶¶ 6, 8, 10, 12.) Advertising is considered to be a deductible cost in the determination of Lanham Act damages. *See, e.g., Aladdin Mfg. Co. v. Mantle Lamp Co. of Am.*, 116 F.2d 708 (7th Cir. 1941). Accordingly, the Court grants ICS a deduction from its profits for those advertising costs identified as such at Form 1120S, line 16 of the tax returns filed during the relevant time period. (*See* Pl.'s Exs. 2-5.)

However, to the extent that ICS seeks deductions beyond the amount specifically identified as advertising on the tax returns, the Court concludes that ICS has failed to make a credible showing that those other deductions should be treated as advertising costs. ICS claims that certain credit card expenses claimed as deductions in the returns are, in fact, advertising costs. However, in his deposition testimony, the president of ICS, William Smith, admitted that he and his wife regularly used the same credit card account for both business and personal expenses. (Lawrence Supp. Decl., Ex. D at 101-02, 104.) Although Smith also testified that his accountant separates out the personal and business expenses and deems any personal expenses as "salary," ICS provides no documentary evidence or testimonial evidence from his accountant to support this claim. (Lawrence Supp. Decl., Ex. D at 102.) Moreover, ICS fails to provide any documentation, such as the credit card

5

statements for the relevant time period, indicating that the amounts listed as "credit card" expenses on its tax returns were used exclusively for advertising.[6] In fact, ICS's tax returns indicate that advertising expenses were deducted as separate entries at line 16 of ICS's 2002 through 2005 tax returns. (Pl.'s Exs. 2-5.) Despite repeated discovery requests from defendant, plaintiff has declined to submit its credit card statements in order to substantiate its claims that the credit card expenses represent advertising costs. (*See* Lawrence Supp. Decl., Ex. B.) Accordingly, the Court finds ICS' claimed deductions for advertising under the separate credit card categories to be wholly unsubstantiated. The Court, therefore, declines to deduct these claimed costs from ICS' revenues in calculating the net profit due to Cheap Tickets. *See, e.g., Champion Spark Plug Co. v. Sanders*, 108 F. Supp. 674, 678-79 (E.D.N.Y. 1952) ("[W]hen a case of confusion does appear – when it is impossible to make a mathematical or approximate apportionment – then from the very necessity of the case one party or the other must secure the entire fund. . . . On established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong. . . . He cannot appeal to a court of conscience to cast the loss upon an innocent patentee and by judicial decree repeal the provision . . . which declares that, in case of infringement, the complainant shall be entitled to recover the 'profits to be accounted for by the defendant.'") (citation omitted).

---

[6] In addition, ICS does not explain why, in its 2001 tax return, it claims to have deducted advertising expenses under not one, but two separate categories: "American Express" and "Cost of Service Provider." (Smith Aff. ¶¶ 5-7; Pl.'s Ex. 2.)

Second, the Court declines to deduct plaintiff's legal fees. Legal fees incurred in defending against allegations of infringement should not be deducted in an accounting of profits resulting from the infringement. *See, e.g., Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 586 (5th Cir. 1980) (holding that "claims of deductions of legal fees . . . would not be allowable in any case," because, "[w]hile [the court] cannot tell whether these fees related to this suit, if they did, they would not be deductible"); *Champion Spark Plug Co.*, 108 F. Supp. at 679-80 (denying deduction for legal and accounting fees in trademark infringement case); *see also Silverman v. CBS, Inc.*, 675 F. Supp. 870, 871 n.2 (S.D.N.Y. 1988) (denying deduction for legal fees in case of copyright infringement).

Third, the Court shall deduct the salaries paid by ICS to its infringing employees. There is divergent authority on this issue. For instance, in *Duro Co. (of Ohio) v. Duro Co. (of N.J.)*, 56 F.2d 313 (3d Cir. 1932), in which the Third Circuit adopted the special master's finding that, because the defendant's use of plaintiff's trademark was intentional and was found to be wrongful,

> The defendants should not be permitted to deduct his salary as part of its costs. To permit the defendant to deduct his salary as part of its costs, would be to require the plaintiff to pay him a salary for doing intentional wrongful acts in violation of the plaintiff's rights.

Similarly, in *Champion Spark Plug Co. v. Sanders*, the court held that partners' salaries should not be deducted to the extent that such salaries represent services used towards the infringing activity. *Champion Spark Plug*, 108 F. Supp. at 678; *see also Wolfe v. Nat'l*

6

*Lead Co.*, 272 F.2d 867, 873 (9th Cir. 1959) (declining to deduct infringing partners' salaries). Where, as here, Smith and his wife are not only partners of ICS, but are also the company's officers and its sole employees (Lawrence Supp. Decl., Ex. D at 16-17), the Court is persuaded by the reasoning of *Aladdin Manufacturing Company v. Mantle Lamp Company*, in which the Seventh Circuit deducted the salary paid to an infringing officer because "[t]he amount deducted as salary was actually paid [to the officer] for the management and conduct of the business and in determining the actual profits for which appellee should account, we must credit all costs."  116 F.2d at 713. In that case, the court held that "[s]alaries paid to officers are proper deductions." *Id.* (citing *Providence Rubber Co. v. Goodyear*, 76 U.S. 788 (1869); *Nashville Syrup Co. v. Coca Cola Co.*, 215 F. 527, 533 (6th Cir. 1914); *Stromberg Motor Devices Co. v. Zenith-Detroit Corp.*, 73 F.2d 62, 65 (2d Cir. 1934)). Likewise, the court held in *John B. Stetson Co. v. Stephen L. Stetson Co.* that "defendant is entitled to a reasonable deduction for salary paid to [the president of the company], regardless of the fact that he is responsible for the violation of the decree," on the basis that "[h]is services helped produce the profits from which the plaintiff is to benefit, and the reasonable value thereof should be deducted in the computation." 58 F. Supp. at 591; *see also Hair Assocs. v. Nat'l Hair Replacement Servs.*, 987 F. Supp. 569, 595 (W.D. Mich. 1997) ("Several courts have concluded that the officer of an infringing company is entitled to a reasonable salary which must be taken into account in computing profits.") (collecting cases). In the instant case, where ICS' employees were necessary for the functioning of the business, a reasonable salary deduction (including pension and profit-sharing plans), as represented by plaintiff's tax returns, is appropriate.[7]

In conclusion, the Court finds that plaintiff's claimed business expenses – exclusive of credit card expenses and legal fees – over the period of infringement are equal to $328,982.01. Accordingly, the amount of profits to which Cheap Tickets is entitled is $908,046.67 minus $328,982.01, or $579.064.66. *See* Appendix 1.

### III. TREBLE DAMAGES

For the reasons set forth below, the Court denies Cheap Tickets' motion for treble damages of the profit award. The Lanham Act provides the following guidance with regard to the award of treble damages:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

---

[7] Likewise, the Court also granted deductions for plaintiff's operating costs, including all other deductions claimed on tax returns – with the exception of credit card expenses and legal fees – such as taxes, interest, depreciation, insurance, travel, telephone, supplies, outside consulting, professional fees, bank service fees and office expenses. (*See* Pl.'s Exs. 1-5; Appendix 1.)

7

15 U.S.C. § 1117(a).  Cheap Tickets argues that such an award should be granted because (1) ICS' infringement was willful; (2) the conduct of ICS' business generated complaints from Cheap Tickets customers, who attributed the problems with their travel services to Cheap Tickets; and (3) ICS' revenues cannot be accurately established.  However, the Court finds that none of these reasons suffices for the award of treble damages, which, in this instance, would be punitive, given that (1) the infringing conduct has ceased and (2) despite ICS' claim never to have turned a profit, the Court is awarding a sizeable damage award to Cheap Tickets.  *See, e.g., Brannock Device Co. v. ABC Indus.*, No. 04-CV-1300 (FJS) (GJD), 2006 U.S. Dist. LEXIS 64661, at *23 (N.D.N.Y. Sept. 11, 2006) ("First, a court should not award a plaintiff an enhancement of actual damages for punitive reasons.  Second, a court should not award a plaintiff an enhancement where an award of actual damages represents 'adequate compensation to [a plaintiff] for the infringement.") (quoting *Ramada Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777, 792 (N.D.N.Y. 2003)); *cf. Bear U.S.A., Inc. v. JooAn, Co., Ltd.*, No. 98-CV-7649 (RPP) (KNF), 2001 U.S. Dist. LEXIS 637, at *20 (S.D.N.Y. Jan. 25, 2001) (awarding treble damages where "a significant risk exists that an award of [defendant's] profits, alone, will not be sufficient to compensate plaintiff and to deter future infringing conduct").  Accordingly, Cheap Tickets' request for treble damages is denied.

IV.  ATTORNEYS' FEES AND COSTS

A.  Attorneys' Fees

The Court's April 9, 2004 judgment in this matter states that "attorney's fees . . . will be awarded to Cheap Tickets in an amount to be determined by the Court after submissions by the parties and a hearing, if necessary."[8]  *Int'l Consulting Servs. v. Cheap Tickets*, No. 01-CV-4768 (April 9, 2004) (Judgment).  Cheap Tickets seeks $543,513 in attorneys' fees and $71,942 in costs.  (Def.'s Br., at 7-8.)  ICS has submitted no opposition to Cheap Tickets' request for attorneys' fees.  (Pl.'s Br., at 1-2.)  For the reasons set forth below, the Court finds that defendant's requested attorneys' fees and costs are reasonable, and therefore grants such fees in the amount requested by defendant.

The Second Circuit has recently reiterated that, in awarding attorneys' fees, a district court must establish, in each individual case, what a "reasonable, paying client would be willing to pay."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, – F.3d –, No. 06-CV-0086, 2007 U.S. App. LEXIS 16583, at *3-*4, *20-21 (2d Cir. Jul. 12, 2007) ("We think the better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.") (emphasis in original).  "The presumptively reasonable fee analysis involves determining the reasonable hourly rate for each attorney and

---

[8] Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

8

the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, – F.3d –, No. 06-CV-1212, 2007 U.S. App. LEXIS 18674, at *18 (2d Cir. Aug. 7, 2007) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 2007 U.S. App. LEXIS 16583; *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763-64 (2d Cir. 1998)). Calculating that amount requires the following analysis:

> In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson [v. Hill*, 488 F.2d 714 (5th Cir. 1974)] factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.

*Id.*, at *20-21. The *Johnson* factors include: (1) "[t]he time and labor required," (2) "[t]he novelty and difficulty of the questions," (3) "[t]he skill requisite to perform the legal service properly," (4) "[t]he preclusion of other employment by the attorney due to acceptance of the case," (5) "[t]he customary fee," (6) "[w]hether the fee is fixed or contingent," (7) "[t]ime limitations imposed by the client or the circumstances," (8) "[t]he amount involved and the results obtained," (9) "[t]he experience, reputation, and ability of the attorneys," (10) "[t]he 'undesirability' of the case," (11) "[t]he nature and length of the professional relationship with the client," and (12) "[a]wards in similar cases." *see also Johnson*, 488 F.2d at 717-18. A party seeking attorneys' fees must submit "contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" *Masterfile Corp. v. J.V. Trading (Gledale) Ltd.*, No. 06-CV-6204 (CM) (KNF), 2007 U.S. Dist. LEXIS 52044, at *11 (S.D.N.Y. Jul. 18, 2007) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)).

In successfully defending against this action and pursuing its counterclaims, Cheap Tickets engaged the services of the law firm Morrison & Foerster LLP ("MoFo"). J. Alexander Lawrence, Esq. ("Lawrence"), a partner of MoFo, submitted a declaration setting forth: (1) the billing rates at which he and the other four attorneys (one associate, two partners, and one former of counsel/current partner) and three legal assistants performed legal services for Cheap Tickets; (2) biographical information about the attorneys' professional backgrounds; and (3) a monthly summary of fees charged and (4) a breakdown of hours worked per attorney and legal assistant. (Lawrence Decl. ¶¶ 5-8, Ex. C.) Based upon the records, MoFo's legal staff spent 1,685.75 hours on this matter,[9] and Cheap Tickets was charged at rates of $340-$491 for Lawrence, $400-$540 for the other two partners, $350-$450 for the of counsel/partner, $305 for the additional

---

[9] Cheap Tickets does not seek to recover (and has excluded from its attorneys' fees calculation): (1) approximately $22,258 in attorneys' fees incurred in addressing ancillary disputes of contributory infringement with regard to ICS' business partners, and (2) fees of any attorney or staff member who billed less than twenty hours to this matter (a total of $24,156 in additional fees).

9

associate, and $105 to $126 for the legal assistant over the period from 2001 through December 31, 2006. (Def.'s Br., at 7; Lawrence Aff. ¶¶ 5-8.)

Having considered both the *Arbor Hill* and *Johnson* factors – including the customary hourly rates charged by law firms in the New York City market – and having reviewed Cheap Tickets' submissions to the Court, which identify the services performed by MoFo, the Court finds that the rates charged by MoFo are reasonable, and that $543,513 in attorneys' fees was reasonably incurred by Cheap Tickets in successfully defending against ICS' actions and in pursuing its counterclaims against ICS. *See, e.g., Masterfile Corp.*, 2007 U.S. Dist. LEXIS 52044, at *12 (awarding attorneys' fees based on the *Arbor Hill* factors); *Nat'l Assn. for the Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04-CV-2983 (DLC) (KNF), 2006 U.S. Dist. LEXIS 89148, at *17 (S.D.N.Y. Dec. 11, 2006) (finding rates of $490 to $540 for a partner $325 to $440 for associates, $230 for a law clerk, $200 for a senior paralegal and $180 for paralegal services to be reasonable), *adopted in full*, 2007 U.S. Dist. LEXIS 13018 (S.D.N.Y. Feb. 23, 2007). Accordingly, the Court grants defendant's request for attorneys' fees.

### B. Costs

In addition, Cheap Tickets requests reimbursement of legal costs incurred by MoFo, including compensation for electronic research and other expenses, and excluding the cost of overtime meals and taxis. (Def.'s Br., at 8; Lawrence Aff. ¶ 5.) The Court finds that the claimed costs are reasonable, and grants defendant's request for $71,942 in costs. *See, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) ("We agree that the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award. If [the firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award.").

### V. INTEREST PAYMENTS

Cheap Tickets seeks both prejudgment and postjudgment interest on this Court's damages award. ICS has submitted no opposition to this request. For the reasons set forth below, Cheap Tickets' request is granted with regard to both prejudgment and postjudgment interest.

### A. Prejudgment Interest

Cheap Tickets requests that the Court award prejudgment interest at the rate of nine percent per annum, the statutory rate of interest in New York. (Def.'s Br., at 9 (citing N.Y. C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."))).) "Although Section 1117(a) does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for 'exceptional' cases." *Am. Honda Motor Co.*, 918 F.2d at 1064 (citing *Champion Spark Plug Co.*, 108 F. Supp. at 674 (awarding prejudgment interest)). Where, as here, the infringing party was made aware that they were engaging in potentially infringing activity and continued to do so nonetheless, courts have awarded prejudgment interest accruing from the date that the infringing party received such notice.

*See Duro Co. (of Ohio)*, 56 F.2d at 317 (calculating interest from "the date when notice of infringement was given to the defendant"); *John B. Stetson Co.*, 58 F. Supp. at 596 (awarding prejudgment interest where "defendant deliberately took the chance [of infringing] and profited by it"). One court has explained the rationale for awarding prejudgment interest in Lanham Act cases as follows:

> [A]warding prejudgment interest to the plaintiff is appropriate to give effect to the compensatory scheme Congress contemplated would be employed when trademark rights have been infringed. The purpose of that compensatory scheme is to: (i) ensure that an infringer not profit in any way from its misconduct; and (ii) provide a specific and general deterrent to those who might exploit another's trademark rights without authorization.

*Nat'l Assn. for the Specialty Food Trade, Inc.*, 2006 U.S. Dist. LEXIS 89148, at *20 (awarding prejudgment interest). In this case, Cheap Tickets sent cease-and-desist letters to ICS on December 15, 1999 and July 10, 2001. *Int'l Consulting Servs., Ltd. v. Cheap Tickets*, No. 01-CV-4768, at 5-6 (March 29, 2004) (Order). In response to Cheap Tickets' July 10, 2001 letter, ICS initiated the instant action, attempting to invalidate Cheap Tickets' registered trademarks. *Id.*, at 6. ICS then continued to use the infringing marks until this Court issued its April 9, 2004 judgment. (Def.'s Br., at 4.) Accordingly, the Court finds that, because ICS not only wilfully infringed upon Cheap Tickets' trademarks, but "deliberately took the chance and profited by it," an award of prejudgment interest accruing from the date that ICS first received notice of its infringing conduct – that is, December 15, 1999 – is appropriate, and should be calculated at a rate of nine percent per annum. *John B. Stetson Co.*, 58 F. Supp. at 596; *see Nat'l Assn. for the Specialty Food Trade, Inc.*, 2006 U.S. Dist. LEXIS 89148, at *19-*20, *23 (awarding prejudgment interest at nine percent per annum rate); *Gtfm, Inc. v. Solid Clothing*, No. 01-CV-2629 (DLC), 2002 U.S. Dist. LEXIS 24710, at *10-*11 (S.D.N.Y. Dec. 26, 2002) (noting that "[w]hen calculating prejudgment interest in connection with violations of the Lanham Act, it is within the trial court's discretion to choose what rate to apply" and awarding prejudgment interest at a rate of nine percent per annum) (citing *Gillette Co. v. Wilkinson Sword, Inc.*, No. 89-CV-3586 (KMW), 1992 U.S. Dist. LEXIS 1265, at *35 (S.D.N.Y. Feb. 3, 1992) (awarding prejudgment interest at the "prime rate")).

B. Postjudgment Interest

The Court also grants Cheap Tickets' request for postjudgment interest. Under Section 28 U.S.C. § 1961

> [I]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment.

*See also Nat'l Assn. for the Specialty Food Trade, Inc.*, 2006 U.S. Dist. LEXIS 89148, at *21 (citing 28 U.S.C. § 1961 and awarding

11

postjudgment interest in trademark infringement case). Accordingly, postjudgment interest is granted at the rate prescribed by 28 U.S.C. § 1961.

## VI. SANCTIONS

In the March 29, 2004 order, this Court granted Cheap Tickets' motion for sanctions under Federal Rule of Civil Procedure 37 against ICS, on the basis that ICS had "allowed the destruction of ICS business-related e-mails" and had "lost the original copies of their business records." *Int'l Consulting Servs.*, Ltd., No. 01-CV-4768, at 21 (March 29, 2004 Order). In summary, the Court found as follows:

> [T]his Court does not take sanctions lightly, rather this Court only issues sanctions for the most egregious violations of discovery. ICS were the ones who initiated this lawsuit and knew, or should have known, that they had a responsibility to protect business records. ICS did not preserve e-mail communications even after this lawsuit was commenced or after receiving warnings from Cheap Tickets. The Court finds that ICS' gross lack of care in maintaining their records after the initiation of this lawsuit is worthy of sanctions.

*Id.*, at 21-22. Cheap Tickets now seeks $34,718 in sanctions to compensate it for (1) the costs of collecting documents from third parties as a result of ICS' failure to preserve documents for litigation, and (2) Cheap Tickets' motion for sanctions. (Def.'s Br., at 10.) Cheap Tickets has submitted an itemized list of the hours spent by MoFo on the sanctions motion and third-party discovery ($29,607), as well as the cost of copies, filing, service and subpoenas in relation to discovery efforts necessitated by ICS' failure to preserve evidence ($5,111). (Lawrence Decl., Ex. H.) MoFo devoted 96.5 hours to the motion and additional discovery, an amount of time that the Court finds to be reasonable. In addition, for the reasons set forth *supra*, the Court finds the rates charged by MoFo to be reasonable. Accordingly, the Court grants Cheap Tickets' request for sanctions in the amount of $34,718.

VII. CONCLUSION

For the foregoing reasons, defendant's motion for an accounting, for attorneys' fees and costs, for prejudgment and postjudgment interest and for sanctions is GRANTED. Defendant's motion for treble damages is DENIED. For the reasons stated, the Clerk of the Court is requested to enter judgment in favor of the defendant in the following amounts:

(1) Damages in the amount of $579,064.66 plus (a) prejudgment interest on that amount for the period from December 15, 1999, to April 9, 2004, calculated at the rate of nine percent per annum, and (b) postjudgment interest on that amount for the period from April 9, 2004, to the date of this Memorandum and Order, calculated at the rate prescribed by 28 U.S.C. § 1961.

(2) Attorneys' fees in the amount of $543,513, costs in the amount of $71,942, and sanctions in the amount of $34,718, plus postjudgment interest on the previous three amounts for the period from April 9, 2004, to the date of this Memorandum and Order, calculated at the rate prescribed by 28 U.S.C. § 1961.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 12, 2007
Central Islip, New York

\* \* \*

The attorney for plaintiff is Thomas A. O'Rourke, Esq., Bodner & O'Rourke, 425 Broadhollow Road, Suite 108, Melville, New York 11747. The attorneys for defendant are James E. Hough, Esq., Jamie A. Levitt, Esq., and Joseph Alexander Lawrence, Esq., Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104.